JOANNES, Respondent, vs. RAHR GREEN BAY BREWING
CORPORATION and others, Appellants.*

*April 6—May 2, 1950.*

* Motion for rehearing denied, with $25 costs, on June 30, 1950.

140

For the appellants there were briefs by *Whyte, Hirschboeck & Minahan,* attorneys, and *Victor M. Harding* of counsel, and oral argument by *Mr. Harding* and *Mr. John G. Vergeront,* all of Milwaukee.

For the respondent there was a brief by *Bloodgood & Passmore, John P. Roemer,* and *Charles H. Galin,* all of Milwaukee, attorneys, and *Rodney C. Welsh* of Green Bay of counsel, and oral argument by *Mr. Roemer.*

MARTIN, J. The defendants-appellants take the position that the trial court erred in denying their motions for summary judgment for the following reasons:

1. On the basis of the pleadings and the admitted documents in the record, there is no material issue of fact and plaintiff has no cause of action, either against the creditors' committee or against Miller.

2. Plaintiff is seeking equitable relief because of an alleged cause of action which arose prior to March 6, 1936. Laches

on the part of the plaintiff in prosecuting his action is established as a matter of law.

The facts are as follows:

In 1929 the plaintiff and one Feldhausen, as partners, commenced a malting business in the city of Green Bay. Subsequently, the defendant Miller invested money in this business. Upon the repeal of prohibition, this partnership was incorporated under the name of Green Bay Products Company. Twenty-five shares of the capital stock were issued to the defendant Miller, twenty-four to the plaintiff, and one qualifying share to Feldhausen. On October 28, 1931, the plaintiff agreed to purchase the twenty-five shares held by defendant Miller. The consideration for this purchase was the payment of $26,000, plus an undetermined amount representing the liability which has been incurred by Feldhausen and the defendant Miller in connection with the former partnership. As security for the purchase price, the plaintiff deposited forty-nine shares of the capital stock of the Green Bay Products Company in escrow with the defendant Peoples' Trust & Savings Bank.

On January 20, 1933, the Green Bay Products Company was recapitalized and its name changed to Rahr Green Bay Brewing Corporation, with an authorized capitalization of four hundred thousand shares of common stock, and one hundred thousand shares of preferred stock. The plaintiff was issued two hundred ninety-nine thousand eight hundred shares of this common stock in exchange for the forty-nine shares of the Green Bay Products Company stock, and said stock was redeposited in escrow with the defendant bank pending the settlement of accounts between plaintiff and the defendant Miller. All outstanding preferred stock was acquired by plaintiff's law firm, Jaseph, Young & Everson.

The plaintiff became the president and general manager of the corporation and had complete and exclusive control over its finances. The corporation became indebted in a

large sum of money and on January 26, 1934, a committee of its creditors was formed. The creditors' agreement vested broad powers of management and control in the committee and provided in part:

"4. The creditors' committee shall have power, . . .
"h. To wind up or liquidate the business and affairs of the brewery, and to sell any of its assets in whole or in part whenever in the discretion of the creditors' committee such course may seem advisable, including in any such sale the real estate, trade-marks, trade names, good will and the use of the corporate name, all upon such terms and at such prices as in the sole judgment of the creditors' committee is in the best interests of the creditors."

Plaintiff signed a statement, contemporaneous with the foregoing creditors' agreement, which recited:

"The creditors' agreement, dated January 26, 1934, and hereinbefore referred to, is incorporated herein by reference and made a part hereof with the same force and effect as though set forth herein in detail; and the undersigned hereby consents and agrees to all of the powers conferred upon the creditors' committee contained in said creditors' agreement, and the transfer of the stock made by this instrument is for the purpose of enabling such creditors' committee to carry out the terms and conditions of said creditors' agreement."

Plaintiff assigned to the committee his stock interest which, as already stated, was then held by the Peoples' Trust & Savings Bank as pledgee or escrowee. Defendant Miller likewise consented to the assignment and to the creditors' agreement.

After January 26, 1934, the brewery business was managed by the creditors' committee. Some time late in the year 1935, the committee gave evidence of the fact that it was about to sell and liquidate the assets. The committee was prompted to take this step because of a court decision which held that the preferred stockholders of the brewery would be entitled to voting control of the corporation about March,

1936. The creditors' committee had no control over the preferred stock.

About the same time, the defendant bank threatened to foreclose upon plaintiff's stock which it held in escrow. Plaintiff feared that if such an event occurred the committee, or some third person, would purchase this stock and in that manner acquire the corporate assets.

On December 19, 1935, plaintiff and defendant Miller entered into a written agreement, into which they brought Fischer who up to that time had no interest in the brewery or its difficulties. It was agreed that the plaintiff would take no action to contest a sale of the stock by the bank, and the defendant Fischer would bid it in for the mutual benefit of the parties, taking such action as might be necessary to prevent the sale of the assets; Miller would be primarily obligated to repay any sums advanced to protect the stock, and the equity in the stock would be such sum as the parties might determine, or as might be determined by a court of competent jurisdiction; Fischer would hold the stock so acquired in trust, and no proceedings would be taken by way of resale or transfer to third persons without the written consent of the plaintiff and Miller, except that the plaintiff should have four months from that date, or until April 19, 1936, to effect a sale satisfactory to Miller; Miller would have the ensuing four months, or until August 19, 1936, to effect a sale satisfactory to plaintiff.

This agreement was carried out. Fischer bid in the stock at a sale held by the bank, and immediately commenced an action against the creditors' committee to enjoin the sale of assets.

On December 28, 1935, the creditors' committee held a conference and plaintiff and defendant Miller were present. The committee announced that it would offer to sell the brewery assets on three alternative options:

1. Payment on a deferred basis which would satisfy the claims of creditors at seventy-five cents on the dollar.

2. Payment on a part-cash, part-deferred basis which would pay off creditors at seventy cents on the dollar.

3. Payment on an all-cash basis which would pay off creditors at sixty cents on the dollar.

These alternative options would·be given the Joannes-Jaseph interest on condition "that they will deliver the preferred stock in escrow for deposit with the creditors' committee in the event they do not exercise the option." As already stated, the preferred stock was then owned by members of the Jaseph law firm who were plaintiff's attorneys.

The same options would be given the Miller-Fischer interests on condition that they dismiss their present lawsuit to hold up the sale of assets.

Plaintiff Joannes was to be given thirty days to exercise his option and, if he failed to exercise it, defendant Miller was to have thirty days thereafter to exercise the option. It was provided, however, that both the Joannes interests and the Miller interests must notify the committee by January 4, 1936, whether or not they desired these options.

Plaintiff endeavored to raise the necessary funds to exercise the option offered by the creditors' committee. He sent two wires on January 26, 1936, as follows:

"Murphy in agreement with me to deposit check in escrow with Ralph Smith subject to your ability to deliver title to all assets free from harm."

"Creditors' Committee Rahr Green Bay Brewing Company offer to me is accepted today."

These messages did not state which of the three alternative options was accepted, nor tender the preferred stock (which was a condition precedent to the exercise of the option).

The committee decided that plaintiff had not fulfilled the conditions necessary to exercising the option, and thereupon entered into negotiations with Miller. The latter met the committee's terms and bought the brewery assets. Miller organized a new corporation which took over the brewery

business, and adopted the same corporate name by consent of the committee.

The principal contention of the plaintiff-respondent is that there are issues of fact which bar the remedy of summary judgment and cites four issues between plaintiff and the creditors' committee:

1. *Creditors' agreement.*

This was a valid and binding contract between the creditors and plaintiff. In return for the creditors agreeing to withhold prosecuting their claims, plaintiff transferred his stock to the committee and gave the committee broad powers of management with the right to sell the assets.

Plaintiff claims there is an issue as to whether the creditors' committee was formed merely to allow plaintiff time to secure additional working capital, or because plaintiff was desperate and faced complete loss of his investment. Plaintiff does not contend that there were any misrepresentations of fact which induced him to consent to the creditors' agreement.

The agreement is in writing, is clear and unambiguous, and is not subject to modification by parol evidence. No issue of fact is presented.

2. *Was plaintiff a creditor of the corporation?*

Plaintiff is not bringing this action as a creditor but as a stockholder. Therefore, the question of whether or not plaintiff is a creditor of Rahr Green Bay Brewing Corporation has no bearing on the controversy presented by the pleadings in this case.

3. *Did plaintiff consent to the sale of the assets?*

By agreeing to the creditors' agreement, plaintiff expressly consented to the sale of assets by the creditors' committee to the defendant Miller or anyone else the committee might choose; and by participating in the December 28, 1935, meeting with the creditors' committee and accepting the committee's proposition on how the assets should be offered for sale, plaintiff consented to the sale of assets by the com-

mittee to Miller. Any testimony that the plaintiff might offer would not overcome the consent established by the written instruments.

4. *Good faith.*

The reason the committee sold the assets is acknowledged by both plaintiff and defendants to be because the committee feared that it might lose control of the business to the preferred stockholders. As one of the conditions to a sale, the committee stipulated that the preferred stock must be deposited with it before the sale would be complete. The preferred stockholders had not consented to the creditors' agreement and might have objected to a sale of assets.

The creditors' committee acted within the plain meaning of the creditors' agreement by which they were specifically given the power to sell the assets, and we find nothing to indicate that they did not carry this agreement into effect in good faith.

Plaintiff contends further that there are three contested issues of fact raised as between the plaintiff and the defendants Miller and Fischer:

1. *Breach of agreement.*

There is nothing in the agreement which precluded Miller from buying the brewery assets from the creditors' committee. Pursuant to the agreement, Fischer bought the stock from the bank and secured a restraining order preventing the committee from selling the assets. This brought the creditors' committee to a discussion of settlement, and out of this evolved the three alternative options, with first plaintiff and then defendant Miller having an opportunity to buy the brewery assets.

Plaintiff contends that it was unfair of the committee to impose the condition on him that the preferred stock be deposited with the committee before the assets would be sold. The preferred stock was held by plaintiff's attorneys. How-

ever, defendant Miller was able to comply with this condition which was just as burdensome to him as to the plaintiff, and met the committee's terms.

The December 19, 1935, agreement cannot be enlarged by parol evidence. The issue can only be resolved by an interpretation of the written agreement itself.

2. *Acquisition of stock by Fischer.*

Plaintiff contends that whether Fischer, following the December 19, 1935, agreement, bought the common stock from the bank by cash, or by assuming Miller's indebtedness, is an issue in the case.

All Fischer agreed to do under the agreement was to buy the stock and start a stockholder's action to restrain the sale of assets by the creditors' committee. Fischer did this and it is entirely immaterial under the agreement as to how he bought the stock or what he paid for it. Therefore, no issue of fact is presented by this question.

3. *Consent to purchase by Miller.*

The creditors' committee, by written agreement with plaintiff, was given the power to sell the assets, and they were free to sell to Miller regardless of whether plaintiff consented or objected. The evidence of consent established by the written documents cannot be overturned by evidence from plaintiff.

Plaintiff claims an issue is presented as to how the stock was pledged at the Peoples' Trust & Savings Bank. However, by the December 19, 1935, agreement, Joannes and Miller agreed that Fischer should bid the stock in on the bank's sale of the stock.

The only claim made by plaintiff in his complaint is that the sale of assets by the creditors' committee to Miller was wrongful and should be set aside. The other relief prayed by plaintiff in his complaint is incidental to a setting aside of the sale. We are unable to find any substantial issue of fact related to this claim.

The contractual relationship between plaintiff and the creditors' committee is established by the creditors' agreement and the stock assignment, both dated January 26, 1934. The contractual relationship between Joannes, Miller, and Fischer is established by the agreement of December 19, 1935. The sale of the brewery assets by the creditors' committee, and the purchase by Miller, were authorized by the creditors' agreement. Furthermore, the sale was expressly consented to and authorized when Joannes agreed to the three alternative options submitted by the creditors' committee on December 28, 1935, with Joannes to have the first opportunity to buy and Miller to have the second opportunity. The sale is conclusively established by the undisputed documents.

It was held in *Londo v. Integrity Mut. Ins. Co.* (1946), 249 Wis. 281, 284, 24 N. W. (2d) 628, that when undisputed documents submitted in support of a motion for summary judgment under sec. 270.635, Stats., show that the movant is entitled to the judgment demanded, the court must grant the motion, whatever other facts may be in dispute under the record. See also *Schau v. Morgan* (1942), 241 Wis. 334, 344, 6 N. W. (2d) 212.

We agree with the trial court that the plaintiff is not barred by laches but, in view of our decision that the defendants-appellants herein are entitled to summary judgment under sec. 270.635 (6), Stats., a discussion of this question is unnecessary.

*By the Court.*—Orders reversed and cause remanded with directions to grant appellants' motions for summary judgment.